**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **LISA VOGAN**<br>**KELLY VOGAN**<br>1 Vandever Court<br>Brookeville, MD  20833<br><br>      Plaintiffs,<br><br>v.<br><br>**MCMICHAEL TAYLOR GRAY, LLC**<br>355 Engineering Drive, Suite 260<br>Peachtree Corners, GA  30092<br><u>**SERVE ON:**</u><br>The Corporation Trust Incorporated,<br>      Resident Agent<br>2405 York Road, Suite Suite 201<br>Lutherville Timonium, MD  21093-2264<br><br>AND<br><br>**DANIEL ISRAEL SINGER**<br>d/b/a Singer Law Group<br>2192 Martin, Suite 150<br>Irvine, CA 92612<br><br>AND<br><br>**KAMINI BAY ASSET MANAGEMENT,**<br>**LLC**<br>7715 Crittenden Street, #105<br>Philadelphia, PA  19118<br><u>**SERVE ON:**</u><br>Lisa K. Lemire, Managing Member<br>7715 Crittenden Street, #105<br>Philadelphia, PA  19118<br><br>      Defendants | Case No. 20-613<br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMAND** |

**COMPLAINT**

Plaintiffs Lisa and Kelly Vogan ("Mr. & Mrs. Vogan" or "Plaintiffs"), through their

undersigned counsel Phillip Robinson and the Consumer Law Center LLC, hereby file this

Complaint and Jury Demand against Defendants McMichael Taylor Gray, LLC ("MTG"), Daniel Israel Singer d/b/a Singer Law Group ("Singer"), and Kamini Bay Asset Management, LLC ("Kamini") (collectively "Defendants"), and say in support:

## INTRODUCTORY FACTUAL BACKGROUND

1.   The underlying matter involves a new industry of professionals who are acquiring interests in defaulted mortgage debts for pennies on the dollar with the aim to collect large profits on that debt through threats of foreclosure and other means but without the right to do so because they are willfully violating certain Maryland and Federal laws governing their activities.

2.   The Defendants' direct and indirect conduct is done under the color of law when in fact they have no right to threaten or even to actually use Maryland courts since they are acting illegally and no unlicensed professional with unclean hands is entitled to use the Maryland courts in furtherance of its illegal business.

3.   In this instance, the Defendants' actions have not only harmed the Plaintiffs through unlawful conduct but also harms other professionals who do not violate the law.  In other words, the Defendants' conduct seeks an unfair advantage over their competitors who (i) do not misstate the true facts, (ii) who are licensed professionals, and (iii) do not act unfairly, deceptively, or abusively ignore their legal, statutory and contractual duties.

4.   The subject practices involved in this action include: (i) Kamini's improper demand for sums it claims are due to it from the Plaintiffs, directly and indirectly through Singer and MTG and others involved in the mortgage lending process, with the intent that Plaintiffs and others rely upon its unfair or deceptive demands; (ii) MTG's conduct as an unlicensed collection agency under Maryland law as required by the Maryland Collection Agency

2

Licensing Act ("MCALA"), BUS. REG. § 7-101, *et seq.*; (iii) Singer's illegal conduct in violation of the Maryland Mortgage Lender Law ("MMLL"), FIN. INST. § 11-501, *et seq.* and/or Maryland Credit Services Business Act ("MCSBA"), COM. LAW § 14-901, *et seq.*; and (iv) Kamini's illegal conduct in violation of the MMLL. The Defendants' collectively engaged in improper threats of debt collection activities, with the intent that Mr. & Mrs. Vogan would rely on them and pay them sums in excess of what is lawfully able to be collected.  In fact, the Plaintiffs did rely on the threats of collection to their detriment and incurred legally cognizable damages.

5.    Mr. & Mrs. Vogan's damages and losses proximately caused by Defendants include but are not limited to: (i) false and incorrect reporting to third parties that Mr. & Mrs. Vogan are delinquent or in default on a mortgage loan for sums which are not collectable, (ii) significant emotional damages, with physical manifestations such as anxiety, stress, frustration, anger, and fear.  These damages were proximately caused by the Defendants' wrongfully threatened debt collection, improper mortgage servicing, and/or threatened foreclosure on the Plaintiffs' home.  The Defendants' unlawful acts prevented the Plaintiffs from quietly enjoying the benefit of homeownership and risk-free sale of their home (which is their right) without having to pay in excess of what the Defendants are lawfully entitled to collect.  This action also seeks compensatory, statutory damages, costs and reasonable attorneys' fees in excess of $75,000 for each Plaintiff from the Defendants.

## THE PARTIES

6.    During the times relevant and material to this Complaint, Mr. & Mrs. Vogan are residents of Brookeville, Maryland in Montgomery County.  The Loan subject to these proceedings

3

is a consumer loan. It was used by Mr. & Mrs. Vogan primarily for personal, family or household purposes.

7.   McMichael Taylor Gray, LLC ("MTG") is an unlicensed collection agency and a non-Maryland law firm affiliated with Singer in relation to the Plaintiffs.  MTG's conduct subject to this action occurred from its offices located at 355 Engineering Drive, Suite 260 in Peachtree Corners, GA  30092 by non-Maryland attorneys.  In this action:

   a.   MTG is a collection agency as that term is defined in MCALA but it does not have a license as required by MCALA and it is not exempt from the mandatory requirement to have such a license.

   b.   MTG is a collector as that term is defined in by CTS. & JUD. PROC. § 5-1201(d) and COM. LAW § 14-201(b) for its work on behalf of Singer and Kamini.

   c.   MTG is a debt collector pursuant to 15 U.S.C. §1692a(6) because its principal business activity is the collection of debts on behalf of others, including Singer and Kamini, and it uses instrumentalities of interstate commerce or the mails related to the enforcement of security interests as described in 15 U.S.C. §1692f(6) which bars certain debt collectors from threatening to take any nonjudicial action to effect dispossession of property when there is no present right to possession of the property claimed as collateral when the debt collection action is barred as a matter of law.

8.   Daniel Israel Singer d/b/a Singer Law Group ("Singer") conducts business from his business location at 2192 Martin, Suite 150 in Irvine, CA 92612.  He is affiliated with MTG and Kamini in relation to the Plaintiffs.  Singer is not licensed as a Maryland attorney and employs non-Maryland attorneys, including Devon Ramos, as part of his business subject to this action.  In this action:

a. Singer is a mortgage lender and servicer as defined by FIN. INST. § 11-501(j)(n) but is not licensed as required under the MMLL and is not otherwise exempt from the MMLL.

b. Singer is also a credit services business as defined by COM. LAW § 14-1901(e) but is not licensed as required under the MCSBA and is not otherwise exempt from the MCSBA.

c. Singer is a collector as defined by CTS. & JUD. PROC. § 5-1201(d) and COM. LAW § 14-201(b).

d. Singer acts as an agent for Kamini and has a business relationship and partner with Kamini.  Kamini is vicariously liable for the acts and omissions Singer has taken on its behalf as described *infra*.

9. Defendant Kamini Bay Asset Management, LLC ("Kamini") was formed with the primary purpose of acquiring defaulted, consumer debts for pennies on the dollar and thereafter attempting to collect on those debts and reap huge profits by conducting foreclosure sales and/or other collection activities for sums far in excess of its investment. It conducts its business activities from its location at 7715 Crittenden Street, #105 in Philadelphia, PA 19118. Kamini is an affiliate of Singer.  In this action:

a. Kamini is a mortgage lender and servicer as defined by FIN. INST. § 11-501(j)(n) but is not licensed as required under the MMLL and is not otherwise except from the MMLL. Kamini is not a statutory trust.

b. Kamini is a debt collector pursuant to 15 U.S.C. §1692a(6) because its principal business activity is the collection of defaulted debts. *See also Barbato v. Greystone All., LLC*, 916 F.3d 260 (3d Cir. 2019).  Alternatively, Kamini is also a debt collector pursuant to 15 U.S.C. §1692a(6) because its principal business activity involves the use

ofinstrumentalities of interstate commerce or the mails related to the enforcement of security interests as described in 15 U.S.C. §1692f(6) which bars certain debt collectors, like Kamini, from threatening to take any nonjudicial action to effect dispossession of property when there is no present right to possession of the property claimed as collateral when the debt collection action is barred as a matter of law.

    c.  Kamini is also a collector as defined by CTS. & JUD. PROC. § 5-1201(d) and COM. LAW § 14-201(b).

10.    Not named as a party to this action, PNC Bank, NA is a predecessor in interest to Kamini in relation to the Second Lien Loan subject to this action.

11.    Not named as a party to this action, Land Home Financial Services, Inc. ("Land Home") is a licensed Maryland lender servicer/lender which is affiliated with Kamini and Singer but is not licensed to conduct its business from either Kamini's or Singer's business locations either directly or indirectly.  In relation to the Second Lien Loan subject to this action Land Home has delegated all material servicing activities to Singer.  However, Land Home is not permitted under the MMLL and its license to conduct business issued by the State of Maryland to do so.

12.    Not named as a party to this action is Devon Ramos who is an employee and/or authorized representative of Singer who is not licensed to practice law and whose contact information is as follows: Devon Ramos, Asset Manager, Singer Law Group, Office: (888) 522-6214 Ext 103, Direct: 949-449-1576, Fax: (949) 420-2177, 2222 Martin,  Suite 214, Irvine, CA 92612, devon@dsingerlawgroup.com.

**JURISDICTION AND VENUE**

6

13.    This Court has jurisdiction of this matter based upon (i) federal question jurisdiction (28 U.S.C. § 1331) and (ii) supplemental jurisdiction (28 U.S.C. § 1367(a)).

14.    This Court also has jurisdiction pursuant to 28 U.S.C.A. 1332 since the parties are residents of different states and the amount in controversy exceeds $75,000.00.

15.    Venue in this Court is proper in that the Defendants transact business within Maryland in relation to Maryland residents as part of their debt collection/mortgage servicing/credit services practices including the conduct complained of here which occurred in Montgomery County, Maryland.

## ADDITIONAL FACTS RELATED TO PLAINTIFFS & DEFENDANTS

### A. RELEVANT AND MATERIAL BACKGROUND ON THE DEFENDANTS

16.    MTG is a "full-service default and creditor (sic) right law firm" that "serves clients through every stage of the default process and in all matters associated with non-performing real and personal property collateral" according to its website (www. https://mtglaw.com/). These debt collection services include threats of litigation, conducting debt collection litigation on behalf of creditors, participation in loan modification efforts between creditors and consumers, and general and complex litigation.

17.    According to its website (http://kaminibay.com/)(last visited February 28, 2020) and other research, Kamini is a "principal buyer of distressed residential mortgage assets across the United States." More specifically, it has approximately 10 employees and is valued at approximately $3,000,000 in its standard and uniform business of acquiring a variety of non-performing residential mortgages to liquidate on them as soon as possible. Kamini's managing member is Lisa K. Lemire.

7

18.     Kamini assists in making mortgage loans with its partner Singer by purchasing loans on the secondary mortgage market which allows those it acquires loans, including PNC Bank, NA, to have more liquidity to provide other borrowers.

19.     Singer is a professional debt collector who represents mortgage lenders, loan servicers, private equity firms and other financial institutions in various corporate, real estate and business transactional matters with a focus on acquisitions of performing and non-performing first and second mortgages, bankruptcy, loan recovery and loss mitigation.  In addition:

a.  Singer has been personally involved in over 10,000 residential foreclosures.

b.  Singer has represented creditors in at least 10,000 bankruptcy proceedings.

c.  Singer's business focus changed when he was introduced a project involving a portfolio of non-performing mortgages that were not bank-owned but were investor owned. Here, Singer learned about the business he describes as the "note space."

d.  Since 2012, Singer has worked nearly 100% of his business in this "note space," of which he explains that "the note investor cares about one thing: How quickly can I turn that property back into cash? There's no governmental reporting. There's no dealing with insurance policies and bonds."

e.   Singer's Note Space market is designed around where he can more easily liquidate the note asset and avoid "state or federal scrutiny either through requirements of debt buying licenses, pre-foreclosure workouts."

f.  Singer also admits that he acts as a special mortgage servicer working to collect on debts owned by others and himself.

8

g.  Singer's business practice also considers certain matters when he acquires an asset (i.e. delinquent mortgage note for pennies on the dollar)  including weighing how long it may take to foreclose (one of his business partners explained, "If you buy an asset in Maryland, it's going to take you X amount of time, decide that, 'I think I want to shorten this.' I think you have to plan your exits based around that").

20.   Pursuant to 12 U.S.C.A. § 2605(k)(1)(C)(E), Singer has duties to the Plaintiff to (i) take appropriate steps to avoid foreclosure as part of its standard servicer's duties and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605.  Amongst these obligations are the servicer's duties to comply with state laws and regulations that are not expressly preempted by RESPA; in other words Congress and the CFPB expressly intended for RESPA to work in concert with state regulation.  *See e.g.*  12 U.S.C.A. § 2605(h) and 12 C.F.R. § 1024.33(d) (expressly limiting preemption to certain notice issues).

21.   Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), Singer is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law."  Pursuant to 12 C.F.R. § 1024.35(b)(5), Singer is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."  It is unreasonable and a violation of its duties for Singer to demand inaccurate sums due from Mr. & Mrs. Vogan and it has no right to collect or attempt to collect any sums from the Plaintiffs which were barred by Federal and State laws governing the Plaintiffs' mortgage laws.

22.     The Maryland Mortgage Fraud Protection Act, REAL PROP. § 7-401, *et seq.*, establishes a statutory duty upon each of the Defendants to disclose to mortgage borrowers and homeowners, like Mr. & Mrs. Vogan, the material information with respect to the mortgage lending process which includes those fees and costs which it is permitted to charge borrowers. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011). In this case, the Defendants have duties to disclose to the Plaintiffs that it was barred by Federal and Maryland law from attempting to collect sums not owed or otherwise not permitted under Federal and State laws governing the relationship of the borrowers.

23.     Kamini and Singer (and their predecessors in interest and certain of their agents) have duties to send periodic statements to the Plaintiffs identifying certain information as required by 15 U.S.C.A. § 1638(f) and 12 C.F.R. § 1026.41.[1] *See also* COM. LAW § 12-106.

24.     Kamini and Singer (and their predecessors in interest and certain of their agents) are also prohibited when servicing and collecting upon a loan that has been charged off by their

---

[1]      The CFPB official interpretation of 12 CFR § 1026.41(a) states that:

"The periodic statement requirement in § 1026.41 applies to the 'creditor, assignee, or servicer as applicable.' The creditor, assignee, and servicer are all subject to this requirement ….., but only one statement must be sent to the consumer each billing cycle. When two or more parties are subject to this requirement, they may decide among themselves which of them will send the statement."

predecessor from attempting to collect or acting collecting, directly or indirectly, retroactive fees from a borrower.  12 C.F.R. § 1026.41(e)(6)(ii)(B).

**B.      SPECIFIC FACTS RELATED TO THE PLAINTIFFS' CLAIMS IN THIS ACTION AGAINST THE DEFENDANTS**

25.   On or about August 15, 2007, Plaintiffs borrowed the sum of $86,500.00 from National City Bank on a second lien mortgage loan ("Second Lien Note").

26.   The Plaintiffs used the proceeds of the Second Lien Note for consumer (non-commerical) purposes to acquire their home and property located at 1 Vandever Court in Brookeville, Maryland 20833 ("the Property").  The Second Lien Note qualifies as:

   a.   "Consumer credit" as defined in COM. LAW § 13-101(d).

   b.   A "consumer transaction" as defined in COM. LAW § 14-201(c) and CTS. & JUD. PROC. § 5-1201(g).

   c.   "Consumer debt" as defined in CTS. & JUD. PROC. § 5-1201(e).

   d.   "Debt" as defined in 15 U.S.C.A. § 1692a(5).

   e.   An "extension of credit" as defined in Com. Law § 14-1901(f).

27.   The settlement of the transaction related to the Second Lien Note occurred in Maryland and concerned the Property which is located in Maryland.

28.   Like many other homeowners, due to a reduction of income, the Plaintiffs fell behind on the Second Lien Note and defaulted on their obligation more than three years before the commencement of this action.  More specifically, the last payment the Plaintiffs made on the Second Lien Note was before September 2014.

29.   PNC Bank, as the owner and servicer of the Second Lien Note, notified the Plaintiffs in writing and without limitation that it had charged off the note on or before October 16,

2017 by its voluntary act and written notice to the Plaintiffs.  Because of this notice and voluntary election by PNC, Plaintiffs reasonably believed pursuant to the Maryland law governing the then relationship between PNC and the Plaintiffs that Plaintiffs' remaining payment obligations on the Second Lien Note were discharged.

30.   Following the notice in the preceding paragraph, Plaintiffs never heard from PNC again in relation to the Second Lien Note until after May 15, 2019 when they received a Notice of Servicing Transfer to Land Home effective June 1, 2019.  However, Land Home concealed from the Plaintiffs its business affiliation and relationship with Singer.  In addition, Singer never sent to the Plaintiffs the notice required by Com. Law § 13-316.

31.   However, after September 3, 2019 Plaintiffs received from Land Home a Notice of Sale of Ownership of a Mortgage Loan in relation to the Second Lien Note stating that the loan had been sold to a "new creditor;" but this notice unfairly and deceptivly concealed the name of the new creditor as required by 15 U.S.C.A. § 1641(g).

32.   In November 2019, Plaintiff Lisa Vogan received from MTG correspondence dated October 31, 2019 from its Peachtree Corners, Georgia office which claimed they were in default on the Second Lien Note and she owed "a total of $43,734.92…which includes past due payments, accrued interest…and…additional fees" on the loan to Kamini.  No attorney was identified on this collection notice as its author by MTG whatsoever.   This correspondence was false and deceptive and otherwise asserted a right to collect sums not lawfully due and owing as exemplified by the following:

a.   As unlicensed lenders acting in contravention of the MMLL, Kamini and Singer are not permitted to claims any right for interest, fees, or other sums in excess of the principal amounts claimed due.  *See e.g.* Fin. Inst. § 11-523(b).

12

b.   An unlicensed professional is not permitted to utilize the Maryland courts to carry-out its business.  Since Kamini's and Singer's conduct violates certain criminal statutes they have no right use Maryland courts to carry out their illegal business activities.

c.   The statement claimed a right to collect retroactive sums barred by 12 C.F.R. § 1026.41(e)(6)(ii)(B) on behalf of Kamini and Singer in the total sum of $118,815.37. Kamini and Singer stand in the shoes of their assignor's and are entitled to no greater rights than their assignor's had to give them.

d.   The statement claimed a right to collect sums by litigation barred by Maryland's limitations governing the Loan (i.e. three years) which is not permitted under Maryland law.  *See e.g.* CTS. & JUD. PROC. § 5-1202(a).

33.   In November 2019, Plaintiff Lisa Vogan also received from MTG additional correspondence dated October 31, 2019 from its Peachtree Corners, Georgia office which claimed she was in default on the Second Lien Note and she owed interest in the amount of $37,788.96 and late fees in the sum of $194.97 on the loan to Kamini.  No attorney was identified on this collection notice as its author by MTG whatsoever.  This statement was unfair, deceptive, and otherwise abusive because MTG has not right to assert a right to collect as an unlicensed collection agency under Maryland law.

34.   The second piece of correspondence identified in the preceding paragraph also stated that pursuant to the Fair Debt Collection Practices Act, Ms. Vogan could only dispute the representations of MTG in writing in order for MTG to validate the debt.   This is a false and deceptive statement since the FDCPA does not limit Ms. Vogan's right to dispute MTG contention's to written communications.

13

35.     On October 23, 2019, Land Home on behalf of and with the authority of Kamini sent to the Plaintiffs a mortgage statement claiming a right to collect fees and charges in the amount of $129.98 plus overdue payment in the sum of $43,669.93 and a right to foreclose to take the Property.   In that statement, Land Home acknowledged the last payment received on the Second Lien Note was March 1, 2014.  Kamini and Singer, through their agent Land Home, intended for the Plaintiffs to rely upon the statement.   The statement was false and deceptive and otherwise asserted a right to collect sums not lawfully due and owing as exemplified by the following:

   a.   As unlicensed lenders acting in contravention of the MMLL and not permitted to claims any right for interest, fees, or other sums in excess of the principal amounts claimed due. *See e.g.* FIN. INST. § 11-523(b).

   b.    An unlicensed professional is not permitted to utilize the Maryland courts to conduct its business.  Since Kamini's and Singer's conduct violates certain criminal statutes they have no right to use Maryland courts to carry out their illegal business activities.

   c.   The statement claimed a right to collect retroactive sums barred by 12 C.F.R. § 1026.41(e)(6)(ii)(B) on behalf of Kamini and Singer.  Kamini and Singer stand in the shoes of their assignor's and are entitled to no greater rights than their assignor's had to give them.

   d.   The statement claimed a right to collect sums by litigation barred by Maryland's limitations governing the Loan (i.e. three years) which is not permitted under Maryland law. *See e.g.* CTS. & JUD. PROC. § 5-1202(a).

36.     On December 2, 2019, Land Home on behalf of and with the authority of Kamini sent to the Plaintiffs a mortgage statement claiming a right to collect late charges in the amount of

14

$64.99 plus overdue payment in the sum of $44,449.76 and a right to foreclose to take the Property. In that statement, Land Home acknowledged the last payment received on the Second Lien Note was March 1, 2014. Kamini and Singer, through their agent Land Home, intended for the Plaintiffs to rely upon the statement. The statement was false and deceptive and otherwise asserted a right to collect sums not lawfully due and owing as exemplified by the following:

a. As unlicensed lenders acting in contravention of the MMLL and not permitted to claims any right for interest, fees, or other sums in excess of the principal amounts claimed due. *See e.g.* FIN. INST. § 11-523(b).

b. An unlicensed professional is not permitted to utilize the Maryland courts to conduct its business. Since Kamini's and Singer's conduct violates certain criminal statutes they have no right use Maryland courts to carry out their illegal business activities.

c. The statement claimed a right to collect retroactive sums barred by 12 C.F.R. § 1026.41(e)(6)(ii)(B) on behalf of Kamini and Singer. Kamini and Singer stand in the shoes of their assignor's and are entitled to no greater rights than their assignor's had to give them.

d. The statement claimed a right to collect sums by litigation barred by Maryland's limitations governing the Loan (i.e. three years) which is not permitted under Maryland law. *See e.g.* CTS. & JUD. PROC. § 5-1202(a).

37. On January 27, 2020, the Plaintiffs wrote to MTG to dispute its claimed right to collect from them. MTG never responded to that correspondence as of this filing but it was put on notice to certain issues raised herein and appears simply to wish to aid and assist the

15

illegal conduct of Singer and Kamini and disregarded its own illegal conduct by threatening to foreclose on the Plaintiffs and the Property.

38.   On January 31, 2020, MTG on behalf of and with the authority of Kamini and Singer sent to the Plaintiffs a Notice of Intent to Foreclose in which MTG and Kamini unfairly and deceptively aided the illegal conduct of Singer under the MMLL and MCSBA.  MTG, Singer, and Kamini intended for the Plaintiffs to rely on the Notice of Intent to Foreclose. The statement was false and deceptive and otherwise asserted a right to collect sums not lawfully due and owing as exemplified by the following:

a.   The Notice invited the Plaintiffs to contact Singer about the Second Lien Note but did concealed the facts that Kamini and Singer were acting as unlicensed professionals in contravention of the MMLL and/or the MCSBA.

b.   The Notice was misleading, deceptive, and in contravention of COM. LAW § 14-1902(3)(5).

c.   The Notice did not provide the information required by COM. LAW § 14-1903.1, § 14-1904(b), and § 14-1905.

d.   The notice unfairly and deceptively sought to obtain the Plaintiffs' confidential information related to their first lien mortgage and authorization which is not relevant or material to any authorized, legal, or customary business practice of a bona fide secondary mortgage entity.

e.   As unlicensed lenders acting in contravention of the MMLL, Kamini and Singer are not permitted to claims any right for interest, fees, or other sums in excess of the principal amounts claimed due.  *See e.g.* FIN. INST. § 11-523(b).

16

f.   An unlicensed professional is not permitted to utilize the Maryland courts to carry-out its business.  Since Kamini's and Singer's conduct violates certain criminal statutes they have no right to utilize Maryland courts to carry out their illegal business activities and to threaten foreclosure or any other judicial action against the Plaintiffs.

g.   The statement claimed a right to collect retroactive sums barred by 12 C.F.R. § 1026.41(e)(6)(ii)(B) on behalf of Kamini and Singer.  Kamini and Singer and Singer stand in the shoes of their assignor's and are entitled to no greater rights than their assignor's had to give them.

h.   The statement claimed a right to collect sums by litigation barred by Maryland's limitations governing the Loan (i.e. three years) which is not permitted under Maryland law.  *See e.g.* Cts. & Jud. Proc. § 5-1202(a).

39.   In reliance to the increasing threats of collection Plaintiffs contacted Singer on February 12, 2020 by telephone and spoke to Devon Ramos (extension 103) for about ten minutes. In that communication Ramos represented to Mr. Vogan that Singer is Kamini's representative in relation to the Second Lien Note and he represented that he would act as the go-between between Plaintiffs and Kamini and would get back to the Plaintiffs after doing so.

40.   On February 23, 2020, Devon Ramos called Plaintiffs back and explained that in order for Kamini to 'entertain any offer' the Plaintiffs would have to provide certain information.  In an email communication on that same date to Mr. Vogan at 2:11PM, Ramos on behalf of Singer and MTG sent Plaintiffs several blank forms they represented were needed for an application. These included an authorization for Kamini to communicate with the first lien holder.

41.   The statements made by Ramos on behalf of Singer and Kamini in these communications
and the prior communication on February 12, 2020, were false and deceptive and otherwise
asserted a right to collect sums not lawfully due and owing as exemplified by the following:

   a.   The communications invited the Plaintiffs to contact Singer about the Second Lien
        Note but did concealed the facts that Kamini and Singer were acting as unlicensed
        professionals in contravention of the MMLL and/or the MCSBA.

   b.   The communications were misleading, deceptive, and in contravention of COM. LAW §
        14-1902(3)(5).

   c.   The communications did not provide the information required by COM. LAW § 14-
        1903.1, § 14-1904(b), and § 14-1905.

   d.   The communications unfairly and deceptively sought to obtain the Plaintiffs'
        confidential information related to their first lien mortgage and authorization which is
        not relevant or material to any authorized, legal, or customary business practice of a
        bona fide secondary mortgage entity.

   e.   As unlicensed lenders acting in contravention of the MMLL, neither Singer nor Kamini
        are permitted to claim any right for interest, fees, or other sums in excess of the
        principal amounts claimed due.  *See e.g.* FIN. INST. § 11-523(b).

   f.    An unlicensed professional is not permitted to utilize the Maryland courts to carry-out
        its business.  Since Kamini's and Singer's conduct violates certain criminal statutes
        they have no right use Maryland courts to carry out their illegal business activities and
        to threaten foreclosure or any other judicial action against the Plaintiffs.

   g.   The communications claimed a right to collect retroactive sums barred by 12 C.F.R. §
        1026.41(e)(6)(ii)(B) on behalf of Kamini and Singer.  Kamini and Singer and Singer

18

stand in the shoes of their assignor's and are entitled to no greater rights than their assignor's had to give them.

h.  The communications claimed a right to collect sums by litigation barred by Maryland's limitations governing the Loan (i.e. three years) which is not permitted under Maryland law.  *See e.g.* CTS. & JUD. PROC. § 5-1202(a).

42.  Plaintiffs have sustained damages and losses as a result of the Defendants' unlawful conduct in violation of the Claims asserted herein including:

a.  Defendants claim a right to collect sums (interest and fees) from the Plaintiffs not permitted under the law and greater than the sums that could be collected by their predecessor(s) in interest in an amount of no less than $40,000.00.  This sum constitutes damages owed to the Plaintiffs if Defendants proceed with their attempts to collect the sum not owed as they have threatened to do.

b.  Mr. Vogan has been harmed by the Defendant's false and deceptive statements to third parties, including the Office of the Commissioner of Financial Regulation, concerning the Defendants' asserted rights to collect sums from him not permitted under the law and that put him in a negative, false light.

c.  Ms. Vogan has been harmed by the Defendant's false and deceptive statements to third parties, including the Office of the Commissioner of Financial Regulation, concerning the Defendants' asserted rights to collect sums from him not permitted under the law and that put her in a negative, false light.

d.   Mr. Vogan has sustained emotional distress damages as a result of the Defendants' conduct and omissions manifested by anxiety about the uncertainty of his family's financial future; difficulty sleeping; irritability; marital discord; worry relating to the

impact of the potential loss of the house on his family, particularly his special needs daughter who has difficulty adjusting to new environments;  and withdrawal from social and recreational activities .

e.  Ms. Vogan has sustained emotional distress damages as a result of the Defendants' conduct and omissions manifested by worry that friends, family, and neighbors would learn of a publicly filed foreclosure; embarrassment at having to share her personal financial situation with her employer; anxiety and worry about the potential uprooting of her and her family's lives; depressed mood; difficulty sleeping; irritability and short-temperedness; migraines which have increased in frequency and intensity; weight gain; and heartburn.

f.  Plaintiffs are also entitled to certain statutory damages as described herein under certain of their claims.

43.  There is a controversy between the Parties as the Defendants claim rights to act illegally to demand sums due as a result of their illegal conduct and the Plaintiffs believe the Defendants do not have the right to demand sums claimed due from them based on the Defendants' illegal conduct and Federal and State laws.

**COUNT I: Violations of MARYLAND'S CONSUMER DEBT COLLECTION ACT ("MCDCA"), Com. Law § 14-201, *et seq., &* MARYLAND'S CONSUMER PROTECTION ACT ("MCPA"), COM. LAW §§ 13-101 *et seq.***
**(Against all Defendants)**

44.  Plaintiffs incorporates all preceding paragraphs as if set forth fully herein.

45.  At all times described herein since June 2019, Kamini, Singer, and MTG have acted as collectors by attempting to collect upon alleged, invalid debts and sums claimed due from the Plaintiffs arising out of a consumer transaction—their mortgage loan used for personal,

consumer purposes related to the Property.  COM. LAW §14-201(b).  Kamini, Singer, and MTG are aware of the Federal and State laws governing their activities described herein but recklessly disregarded those laws and duties without any consideration of the negative consequences to Plaintiffs, and therefore ratified each other's improper conduct for their own benefit.

46.   Kamini, Singer, and MTG have also attempted to collect from Plaintiffs in manners which also violate the terms of documents governing the Second Lien Note and its security instrument.

47.   Maryland's debt collection and mortgage lending laws and Kamini's, Singer's, and MTG's duties under Maryland law, do not permit them to utilize methods and means of collection not permitted by law or the relationship governing the parties.  Kamini, Singer, and MTG know the law and know that their records related to the Second Lien Note are not accurate.  However, each knowingly and recklessly attempted to interfere or otherwise infect Plaintiffs' rights on the basis of alleged sums not lawfully due, failing to properly respond to inquiries and performing reasonable investigations, and making false and misleading demands, directly and indirectly, to Plaintiffs and others in their knowing and reckless efforts to collect sums not lawfully due from Plaintiffs.  By such acts Kamini, Singer, and MTG have:

   a.   Knowingly and recklessly claimed, attempted, or threatened to enforce rights with knowledge that the rights do not exist, in violation of the MCDCA.  COM LAW §14-202(8).

   b.   Engaged in conduct which violates §§ 804 through 812 of the Federal Fair Debt Collection Practices Act including but not limited to 15 U.S.C. §§ 1692e, § 1692f.

21

COM LAW §14- 202(11).

48.   In addition, MTG's acts and omissions described herein also violate COM LAW §14-202(10) since in attempting to collect upon the Second Lien Note, it has violated MCALA.

49.   Engaged in conduct which violates §§ 804 through 812 of the Federal Fair Debt Collection Practices Act including but not limited to 15 U.S.C. §§ 1692e, § 1692f. COM LAW §14-202(11).

50.   Plaintiffs are therefore entitled to their damages and losses described *supra* which have proximately resulted from Kamini's, Singer's, and MTG's direct and indirect actions in violation of the MCDCA. COM. LAW, § 14-203.

51.   The Defendants' violations of the MCDCA are also *per se* violations of the MCPA. COM. LAW § 13-301(14)(iii).

52.   Singer's violations of the MCSBA are also *per se* violations of the MCPA. COM. LAW § 14-1914.

53.   The mortgage loan servicing and collection practices described herein of each of the Defendants, as set forth herein, are governed by the Maryland Consumer Protection Act ("MCPA"), COM. LAW. § 13-101, *et seq*.

54.   COM. LAW. § 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection and attempted collection of the Second Lien Note by Kamini, Singer, and MTG, and the threatened foreclosure/collection and other acts and omissions related to the Defendants' debt collection practices involves both the extension of credit and the collection of debts.

55.   COM. LAW. § 13-303 also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those provided by Kamini, Singer, and MTG.

22

56.    The MCPA defines unfair or deceptive trade practices to include, *inter alia*, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.  COM. LAW §§13-301(1) and (3).

57.    Kamini's, Singer's, and MTG's acts and omissions described herein, and including but not limited to (i) seeking and demanding sums not legally or contractually due from Plaintiffs, (ii) initiating collection activity by sending false and misleading notices and asserting other false and misleading communications to Plaintiffs when the Defendants knew that no right to collect existed, and (iii) failing to conduct any reasonable investigation of Plaintiffs' disputes whatsoever constitute unfair and deceptive trade practices in violation of COM. LAW § 13-301(1)(3) and COM. LAW §§13-303(4)(5).

58.    Plaintiffs reasonably relied upon the material acts and actions of the Defendants as exemplified *supra*.  As demonstrated herein (i) by their communications with Singer and MTG acting on behalf of Kamini about the Second Lien Loan, (ii) their notification and dispute of the right to collect in reliance to and in response to its continued false and deceptive threats of collection, and (iii) incurred costs, legal fees, and expenses to investigate the Defendants' activities.  The Defendants' acts and omissions are simply unreasonable, unfair, abusive, and deceptive—even those acts after this action commenced which demonstrate it simply wishes to avoid any review of their improper collection and other activities and practices.

59.    Had Singer, MTG, and Kamini not acted unfairly and deceptively, Plaintiffs would not have suffered the damages and losses they have described *supra.*

23

60.    Plaintiffs have pled sufficient facts to put Singer, MTG, and Kamini on notice as to the claims against each as exemplified *supra* (i.e. dates of key acts and representations of Singer, MTG, and Kamini and their agents and representatives; and the regulatory and statutory duties of Singer, MTG, and Kamini which each simply ignored and thereby infected the subject transactions to ensure harm and damage to Plaintiffs).

### COUNT II: VIOLATION OF THE MARYLAND MORTGAGE FRAUD PROTECTION ACT, REAL PROP. §§ 7-401, *et seq.* (Against Singer and MTG)

61.    Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

62.    The Maryland Mortgage Fraud Protection Act ("MMFPA"), REAL PROP. § 7-401, *et. seq.*, governs the relationship between Plaintiffs and MTG and Singer.

63.    REAL PROP. § 7-401(c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs are the record owners of the Property in question and are therefore a Homeowners entitled to the protections of the MMFPA.

64.    REAL PROP. § 7-401(e) provides: "Mortgage lending process… include[s] [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan."

65.    The MMFPA works to protect the interests of all parties to mortgage transactions in Maryland from misstatements, misrepresentations and omissions. In this instance, the MMFPA works to protect borrowers like Plaintiffs from so-called professionals like Singer and MTG to ensure a level, fair playing field between all borrowers and professionals. For example, other mortgage professionals who followed the duties and responsibilities described herein are harmed by MTG's and Singer's violations and false statements and omissions made herein just as the Plaintiffs are harmed.

66.    Plaintiffs are homeowners in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the negotiation and servicing of the Second Lien Loan.

67.    REAL PROP. § 7-401(d) provides: "Mortgage fraud" means any action by a person made with the intent to defraud that involves:

> (1) Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;

> (2)  Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

> (3)  Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

> (4) Conspiring to violate any provisions of item (1), (2), or (3) of this section…

68.    Singer's knowing conduct and intention to defraud Plaintiffs is demonstrated by his and his agent's dishonest and untrue statements (*see e.g.* ¶¶ 35-36, 38, 41), omissions (*see e.g.* ¶¶ 31-32, 35, 41), and willful refusal to know the true facts (*see e.g.* ¶¶ 39, 40).

69.    MTG's knowing conduct and intention to defraud Plaintiffs is also demonstrated by its dishonest and untrue statements (*see e.g.* ¶¶ 32-34, 38), omissions (*see e.g.* ¶¶ 32, 38), and willful refusal to know the true facts (*see e.g.* ¶ 37).

70.    Singer and MTG's acts and omissions described herein have violated REAL PROP. § 7-401(d)(1)(2)(3).

71.    Singer's and MTG's conduct also represents their conspiracy with Kamini to knowingly

and/or recklessly violate REAL PROP. § 7-401(d)(1)(2)(3) in violation of REAL PROP. § 7-401(d)(4).

72.   As a result of Singer's and MTG's knowingly deceptive and untrue communications and misstatements and omissions and acts in the mortgage lending process, Plaintiffs have suffered economic and noneconomic damages described *supra*.

## COUNT III: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692, *et seq.* (Against all Defendants)

73.   Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

74.   Each of the Defendants acquired their interest in the Second Lien Loan during a period in which each allege (directly and indirectly) the loan was in default and therefore each of the Defendants are Debt Collectors within the meaning of 15 U.S.C. § 1692a(6).

75.   MTG and Kamini also are debt collectors pursuant to 15 U.S.C. §1692a(6) because their principal business activity utilizes instrumentalities of interstate commerce or the mails related to the enforcement of security interests as described in 15 U.S.C. §1692f(6) which bars certain debt collectors, like them, from threatening to take any nonjudicial action to effect dispossession of property when there is no present right to possession of the property claimed as collateral when the debt collection action is barred as a matter of law.

76.   By communicating with the Plaintiffs directly and indirectly and threatening and/or actually pursuing litigation and demanding sums not legally due from the Plaintiffs and not permitted under Maryland and Federal laws (as described *supra*), MTG, Kamini, and Singer used false, deceptive, or misleading representations in connection with the attempted collection of the Second Lien Loan from the Plaintiffs in violation of 15 U.S.C. § 1692e(5).

77.    MTG's, Kamini's, and Singer's actions and omissions described herein also constitute unfair or unconscionable means to collect or attempt to collect from the Plaintiffs in violation of 15 U.S.C. § 1692f.   Specifically, acting as unlicensed professionals in contravention of the MMLL, MCSBA, and MCALA is unfair and unconscionable since other bona-fide professionals follow the law but the Defendants apparently want to skirt the laws governing their activities.   In addition, as unlicensed professionals standing in the shoes of their predecessors and assigns, it was unfair and other unconscionable for the Defendants to claim greater rights than their predecessors had to give them to claim a right to demand or collect retroactive sums barred by 12 C.F.R. § 1026.41(e)(6)(ii)(B).

78.    Plaintiffs have suffered actual economic and non-economic damages, as more fully described *supra* and have incurred attorney's fees and court costs as a result of the Defendants' illegal debt collection practices and direct and indirect actions described herein.

79.    The FDCPA provides for statutory damages in addition to actual damages.   The Plaintiffs' damages and losses, proximately caused by the Defendants, are described herein which are incorporated herein by this reference as if repeated here.

### COUNT IV: MARYLAND CREDIT SERVICES BUSINESS ACT ("MCSBA"), COM. LAW § 14-901, *et seq.* (Against Singer only)

80.    Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

81.    Pursuant to Md. Code Ann., COM. LAW § 14-1901(e), a "Credit Services Business" under Maryland law is defined as "any person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such person can or will sell, provide,

or perform, any of the following services in return for the payment of money or other valuable consideration: (i) Improving a consumer's credit record, history, or rating or establishing a new credit file or record; (ii) Obtaining an extension of credit for a consumer; or (iii) Providing advice or assistance to a consumer with regard to either subparagraph (i) or (ii) of this paragraph."

82.   An "Extension of credit" as related to a credit services business "means the right to defer payment of debt or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes." COM. LAW § 14-1901(f).

83.   Singer, directly and indirectly, acted Credit Services Business in his actions with the Plaintiffs described herein.

84.   Maryland law requires that "[a] credit services business is required to be licensed." COM. LAW § 14-1903.  Singer is not licensed under the MCSBA.

85.   A credit services business must also give a consumer to whom it is providing services, a written statement which will detail the services provided, their right to certain required information for the consumer, and the total fees to be charged to the consumers before the credit services business actually performs any services on the consumer's behalf. COM. LAW § 14-1904 & 14-1905. Singer has not provided the required statement.

86.   A credit services business must also provide a consumer a written right to cancel the contract for credit services he establishes with a consumer in a specific form. COM. LAW § 14-1906.  Singer has not provided the Plaintiffs any written right to cancel.

87.   Singer's acts herein were willful and knowing.   This is based upon the nature of the work Singer performs and his knowledge that the services provided to Maryland consumers,

like the Plaintiffs, was illegal and previous challenges to his unlawful activities.   In the alternative Singer's acts in relation to the Plaintiffs' was negligent.

88.     A credit services business which willfully fails to comply with any requirement imposed by the Maryland Credit Services Businesses Act, "is liable to the consumer in an amount equal to the sum of: (1) Any actual damages sustained by the consumer as a result of the failure; (2) A monetary award equal to 3 times the total amount collected from the consumer, as ordered by the Commissioner; (3) Such amount of punitive damages as the court may allow; and (4) In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." COM. LAW § 14-1912(a).

89.     A credit services business which negligently fails to comply with any requirement imposed by the Maryland Credit Services Businesses Act, in failing to comply with any requirement imposed under the law "with respect to any consumer is liable to that consumer in an amount equal to the sum of: (1) Any actual damages sustained by the consumer as a result of the failure; and (2) In the case of any successful action to enforce any liability under this section, the cost of the action together with reasonable attorney's fees as determined by the court." COM. LAW § 14-1912(b).

## PRAYER FOR RELIEF

A.  WHEREFORE, Plaintiffs respectfully requests the Court enter a money judgment pursuant to Counts I and III, under the MCDCA, MCPA, and FDCPA, in their favor and against Defendant Kamini in a sum in excess of $75,000 for each Plaintiff for actual and statutory damages, attorney fees, and costs.

B. WHEREFORE, Plaintiffs respectfully requests the Court enter a money judgment pursuant to Counts I, II, and III, under the MCDCA, MCPA, MMFPA, and FDCPA, in their favor and against Defendant MTG for each Plaintiff for actual and statutory damages, attorney fees, and costs.

C. WHEREFORE, Plaintiffs respectfully requests the Court enter a money judgment pursuant to Counts I, II, III, and IV under the MCDCA, MCPA, MMFPA, FDCPA, and MCSBA in their favor and against Defendant Singer for each Plaintiff for actual, statutory (including treble damages under the MCSBA) damages, attorney fees, and costs.

Respectfully Submitted,

*//s//Phillip R. Robinson*
Phillip R. Robinson
    Bar No. 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304
phillip@marylandconsumer.com